962 So.2d 514 (2007)
Azki SHAH
v.
THE MISSISSIPPI BAR.
No. 2005-BA-00951-SCT.
Supreme Court of Mississippi.
January 4, 2007.
Rehearing Denied April 19, 2007.
*517 Azki Shah (pro se).
Gwendolyn G. Combs, Adam Bradley Kilgore, James Russell Clark, Jackson, attorneys for appellee.
EN BANC.
RANDOLPH, Justice, for the Court.

STATEMENT OF THE CASE
¶ 1. The case at bar involves an attorney with over twenty-two years of experience, who has been repeatedly and severely sanctioned by the Committee on Professional Responsibility ("Committee"), the Complaint Tribunal ("Tribunal") and this Court. Initially, Azki Shah ("Shah") was issued a private reprimand, stemming from an informal complaint filed by Marcus Simmons ("Simmons"). However, Shah chose to have the private reprimand vacated and sought a formal complaint and hearing. After the hearing, the Tribunal chose to disbar Shah. Due to the facts in the case sub judice, we conclude that the leap between private reprimand and disbarment is too great. Today we do not affirm the ruling of the Tribunal, but instead issue a suspension of three years. "This Court is free to modify the punishment as needed to best serve the interests of the Bar and the public." Miss. Bar v. Hodges, 949 So.2d 683, 685, 2006 Miss. LEXIS 379, *3 (Miss.2006) (citations omitted).
¶ 2. As Shah was initially issued a private reprimand by the Committee, this opinion should not be misinterpreted as granting leave to The Mississippi Bar ("Bar") to enhance punishment against an attorney because he elects to appeal, nor should this decision by the Court be misconstrued to discourage attorneys to appeal decisions issued by the Committee, when warranted.
¶ 3. This incident represents the seventh time in less than eight years that Shah has been charged with violating the Rules of Professional Conduct. Shah has previously been suspended from the practice of law on two occasions, once for two years and again for six months. Shah has received three private reprimands and one informal admonition. Shah has repeatedly violated the same rules. In this proceeding, Shah was charged with violating Rule 1.3, a rule he has previously violated on three occasions; Rule 1.4, a rule Shah violated on four prior occasions; Rule 8.4(a), a rule Shah violated on three prior occasions; and Rule 8.4(c), a rule Shah violated on one previous occasion.
¶ 4. When imposing sanctions, this Court, as well as the Tribunal, considers the following:
(1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) the protection of the public; (5) the sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer's mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating or mitigating circumstances.
Id. at 686, 2006 Miss. LEXIS 379, at *5-6 (citation omitted).
¶ 5. Our decision to suspend Shah is markedly influenced by the fact that Shah has not been a stranger to disciplinary proceedings. It is quite apparent that prior *518 attempts at disciplining Shah have failed. As opposed to disbarment, we are hopeful that our ruling will help Shah ameliorate his behavior upon completion of his suspension.
¶ 6. On October 30, 2003, an informal complaint was filed by Simmons against Shah. The Committee referred the complaint to the Office of General Counsel for the Mississippi Bar ("Bar") for investigation, hearing and a report concerning Shah's alleged violations of Mississippi Rules of Professional Conduct 1.2(a), 1.3, 1.4, 8.1(b) and 8.4(a) and (d).
¶ 7. A report was prepared by the Bar and a hearing was scheduled for April 16, 2004. Despite notice, neither Simmons nor Shah attended the hearing. The Bar submitted its investigatory report to the Committee. A copy of the report was furnished to Shah. Shah submitted an Answer to the Investigatory Report. The Committee found Shah violated three Rules of Professional Conduct and imposed a private reprimand.
¶ 8. Shah filed a Formal Request for Disciplinary Proceeding. Accordingly, the private reprimand was vacated. See M.R.D. 7(c). Thus, the Bar then initiated a formal complaint against Shah. The formal complaint alleged Shah violated M.R.P.C. 1.2(a), 1.3, 1.4, 8.1(b), and 8.4(a). Shah answered the formal complaint by denying the allegations made by Simmons and averring the Committee wrongfully imposed discipline.
¶ 9. Subsequently, Shah filed a motion to dismiss the formal complaint, based on the allegation that the Bar contacted and interviewed Simmons in violation of M.R.D. 5.8, after Simmons failed to attend the investigatory hearing. Shah asserts he should have been contacted and allowed to attend the conversation with Simmons. In its Response, the Bar plead Simmons had contacted the Bar to explain his absence from the investigatory hearing and the information Simmons furnished the Bar resulted in no prejudice to Shah. A hearing was held by the Tribunal and Shah's motion to dismiss was denied.
¶ 10. On the same date, the Tribunal proceeded with a formal hearing on the complaint and later, the Tribunal announced its ruling, finding by clear and convincing evidence that Shah violated M.R.P.C. 1.2(a), 1.3, 1.4, 8.1(a), 8.4(a) and 8.4(c). Due to Shah's prior violations, pattern of misconduct, refusal to acknowledge the wrongful nature of his misconduct, his substantial experience in the practice of law, and due to the fact that there were no mitigating factors, the Tribunal found Shah's punishment should be immediate disbarment and to pay all costs of the proceedings. The Tribunal issued an Opinion and Judgment ("Opinion"), which contained its Findings of Fact and Conclusions of Law, finding that Shah violated M.R.P.C. 1.2(a), 1.3, 1.4, 8.1(a), 8.4(a) and 8.4(c). Shah filed a Motion for Judgment of Acquittal Notwithstanding the Verdict, or in the Alternative, a New Trial.
¶ 11. The Tribunal ruled that the issues raised by Shah's Motion for Judgment of Acquittal Notwithstanding the Verdict, or in the Alternative, a New Trial were without merit and denied his motion. Shah timely filed this appeal, listing numerous issues for appeal. The Bar summarized the issues before this Court as follows:
I. Whether the Complaint Tribunal erred in not granting Shah's Motion to Dismiss.
II. Whether the Complaint Tribunal's findings were supported by clear and convincing evidence.
III. Whether the Complaint Tribunal erred in denying Shah's Motion for Judgment of Acquittal Notwithstanding *519 the Verdict, or in the alternative for a New Trial.
IV. Whether the Complaint Tribunal erred in allowing the Mississippi Bar to amend its pleadings at trial to conform to the evidence.
V. Whether two members of the Complaint Tribunal should have recused themselves.

FACTS
¶ 12. Simmons hired Shah as his attorney on April 8, 2002, as Simmons needed an attorney to determine whether Simmons had valid title to property purchased at a tax sale. No written contract of employment was utilized. Simmons paid Shah $165 to research whether Simmons had a legitimate claim, which was confirmed by a receipt at the hearing. Simmons testified that in May of 2002, Shah informed him that he had a valid claim and that Simmons needed to pay him an additional $365 in order for Shah to pursue the claim. In contrast, Shah testified that he charged Simmons a one time fee of $375 to draft, file and serve a complaint.
¶ 13. Simmons testified Shah never initiated contact with him after that date, though Simmons continued to frequent Shah's office to check on the progress of his case. Simmons testified Shah told him he was trying to obtain a court date and later asserted he had obtained a court date. Simmons asked Shah if he needed to be present, as his daughter was very ill and had a doctor's appointment scheduled for the court date. Simmons testified Shah told him he did not need to be there. Simmons stated the initial court date was never mentioned again. Later, Shah told him there was a second court date and that Simmons needed to attend. Simmons stated he took off of work to attend. However, when Simmons arrived at the courthouse, he could not find Shah in the building. Simmons learned then that no court date had been scheduled for his case. Simmons "kept going to the courthouse" and checking with the Chancery Clerk of Coahoma County to find out if anything had been filed regarding his case. Simmons later received a letter from the Clerk which revealed that after researching all dockets from April of 2002 through October 23, 2003, the Clerk could find no case filed on behalf of Simmons. When Simmons later confronted Shah about not filing the suit, Shah presented Simmons with an unfiled complaint.
¶ 14. Shah disputed he told Simmons he had a court date on any occasion. Shah claimed he drafted a complaint for Simmons around December 2002. Shah drafted the complaint based on information Simmons gave him and he was going to research the claim after he drafted the complaint. Shah testified that after research, he determined Simmons' claim lacked merit and thus Simmons did not have a case, which was why the complaint was never filed. Shah claims he explained to Simmons his case lacked merit and refunded him the $375 Simmons had paid to Shah.
¶ 15. Contrary to Shah's version, Simmons stated Shah never told him his claim lacked merit and that Shah would not go forward with it. As Simmons was frustrated with Shah's representation, he contacted the Mississippi Bar. He was advised to request a refund from Shah. Therefore, Simmons wrote Shah a letter terminating the representation and demanding a refund of all fees paid. In the letter, Simmons claimed he had absolutely no communication with Shah for "more than six months" and that he had called Shah's office several times, without result. Simmons wrote that if he did not receive a refund from Shah by October 7, 2003, he would file a complaint with the Bar. On *520 October 10, 2003, Simmons received a check from Shah for $375. On October 30, 2003, Simmons filed an informal complaint with the Office of General Counsel for the Mississippi Bar. Simmons stated he filed the complaint after he received the $375, because he "paid him and never did have court."
¶ 16. Shah filed a one paragraph Answer to Simmons's informal complaint, which averred that Simmons's payment was returned after Shah decided Simmons's claim lacked merit, and asked that Simmons' informal complaint be dismissed. An investigatory hearing was scheduled. Simmons and Shah were noticed by letter of the investigatory hearing, and neither attended. Shah stated he chose not to attend the investigatory hearing based on a previous encounter with Michael Martz (former General Counsel for the Mississippi Bar), without elaboration. Shah further stated he chose not to attend because he did not believe that he was required to attend.
¶ 17. Simmons also did not attend the investigatory hearing. However, shortly after the hearing was scheduled, Simmons called the Bar to explain his absence. Adam B. Kilgore ("Kilgore"), General Counsel for the Bar, testified Simmons related to him that he had received a refund from Shah. Therefore, Simmons felt he did not need to miss work in order to attend the hearing.
¶ 18. Subsequently, the Bar filed its investigatory report. The report stated, inter alia, that Simmons had contacted the Bar to state he had received a refund, that he had communicated with Shah during Shah's representation and that Shah never informed Simmons his claim was without merit.
¶ 19. After the investigatory report was submitted to the Committee, the Committee imposed a private reprimand, based on the limited information before it. Shah then filed a Formal Request for a Disciplinary Proceeding, which automatically vacated the imposition of the proposed discipline, a Private reprimand, pursuant to Mississippi Rule of Discipline 7(c). Shah asserted it was improper for the Committee to issue a judgment, when Shah did not attend the investigatory hearing. Based on Shah's request, the Bar initiated proceedings by filing a formal complaint which alleged Shah violated M.R.P.C. 1.2(a), 1.3, 1.4, 8.1(b), and 8.4(a).
¶ 20. Of significance, the formal complaint contained Shah's prior disciplinary history, unlike the informal complaint: (1) On May 20, 2004, Shah was suspended for two years for violation of M.R.P.C. 1.2(a), 1.3, 1.4, 1.5(a), 8.1(b), and 8.4(a) and (d); (2) On March 20, 2002, Shah was issued a private reprimand for violation of M.R.P.C. 1.16(d); (3) On March 20, 2002, Shah received a second private reprimand for an unrelated violation of M.R.P.C. 1.3, 1.4, and 8.4(a) and (d); (4) On July 29, 1999, Shah was suspended from the practice of law for six months based on reciprocal discipline imposed by the United States Bankruptcy Court for the Northern District of Mississippi, See Miss. Bar v. Shah, 749 So.2d 1047 (Miss.1999); (5) On December 4, 1998, Shah received an informal admonition for violation of M.R.P.C. 1.4 and 8.1(b); and (6) On December 14, 1998, Shah was issued a private reprimand for violation of M.R.P.C. 1.2, 1.3, 1.4, and 8.4(a), (c), and (d).
¶ 21. Shah filed a motion to dismiss the formal complaint, asserting the Bar contacted Simmons after Simmons failed to attend the investigatory hearing and interviewed Simmons over the phone, which deprived Shah the right to cross-examine Simmons. In its Response, the Bar stated Simmons contacted the Bar and Kilgore did not "interview" Simmons, and in fact, *521 the information Simmons furnished Kilgore favored Shah, rather than prejudiced him.
¶ 22. Following the hearing on the motion to dismiss, a hearing was held on the formal complaint. The Tribunal found by clear and convincing evidence that Shah violated M.R.P.C. 1.3, 1.4, 8.1(a), 8.4(a), and 8.4(c). On April 4, 2005, an Opinion and Judgment outlining the findings of the Tribunal was issued.

STANDARD OF REVIEW
¶ 23. "On appeal, this Court shall review the entire record and the findings and conclusions of the Tribunal, and shall render such orders as the Court may find appropriate." Foote v. Miss. State Bar Ass'n, 517 So.2d 561, 564 (Miss.1987). Although this Court may grant deference to the Tribunal, this Court "reviews the evidence de novo, on a case-by-case basis, sitting as triers of fact and no substantial evidence or manifest error rule shields the Tribunal from scrutiny." Id. Further, "[t]his Court retains exclusive jurisdiction and is the ultimate judge of attorney discipline matters, pursuant to Rule 1(a) of the Rules of Discipline for the Mississippi State Bar." Hodges, 949 P.3d at 685, 2006 Miss. LEXIS 379 at *3 (quoting Miss. Bar v. Inserra, 855 So.2d 447, 450 (Miss.2003)).

ANALYSIS
I. Whether the Complaint Tribunal erred in not granting Shah's Motion to Dismiss.
¶ 24. Shah argues the Tribunal erred in not granting his Motion to Dismiss for the following reasons: (1) the Bar interviewed Simmons over the telephone without notifying Shah and giving him the opportunity to cross-examine Simmons; and further, that information from this conversation was submitted to the Committee; (2) Simmons was not placed under oath during his telephone conversation with the Bar; and (3) the Committee on Professional Responsibility rendered a decision without an investigatory hearing and the Committee failed to reschedule the investigatory hearing.
¶ 25. Shah argued the telephone conversation between Simmons and Kilgore should have been recorded under oath. Since it was not, Kilgore should not have submitted the contents of the conversation to the Committee on Professional Responsibility. Both Kilgore and Simmons testified the purpose of the call from Simmons was to explain his absence. Kilgore testified it was a very short conversation wherein Simmons explained he could not attend the investigatory hearing because he had to work and felt his attendance was not necessary as he had received a refund of the fee. Kilgore's testimony as to the details of the conversation were confirmed by Simmons in testimony at the hearing on the formal complaint. Kilgore testified he did not feel it necessary to swear in Simmons as the conversation was simply a courtesy phone call in order to explain Simmons's absence. The Bar argues Shah's arguments are baseless as they each stem from Shah's choice not to attend the investigatory hearing. Shah was aware that Simmons was scheduled to attend the hearing, and Shah may not later argue he did not get the opportunity to interview Simmons, when he was afforded that opportunity and chose not to exercise it. Of even more import, Shah's discipline from the Committee was vacated and he was subsequently afforded a full evidentiary hearing. At the Formal Disciplinary Hearing, all witnesses were placed under oath and were available to be cross-examined by the parties. As Shah's appeal stems from the discipline issued by the Tribunal after the formal disciplinary hearing took place, and the initial discipline issued by the Committee on Professional Responsibility was vacated at Shah's *522 request, the Tribunal did not err in denying Shah's Motion to Dismiss.
II. Whether the Complaint Tribunal's findings were supported by clear and convincing evidence
¶ 26. "`The burden is on the Bar to show by clear and convincing evidence that an attorney's actions constitute professional misconduct.'" Attorney W.L. v. Miss. Bar, 621 So.2d 235, 237 (Miss. 1993) (citations omitted). "`Certainly, when it is performing its important duties, the Complaint Tribunal should employ the clear and convincing evidence standard.' Levi v. Miss. State Bar, 436 So.2d 781, 784 (Miss.1983)." Liebling v. Miss. Bar, 929 So.2d 911 (Miss.2006).
¶ 27. Shah claims the Bar did not prove by clear and convincing evidence he violated M.R.P.C. 1.2(a), 1.3, 1.4, 8.1(a), 8.4(a), and 8.4(c). Shah asserted he did not file Simmons's complaint, as to do so would have caused Shah to be subjected to sanctions, fines, payment of court costs, legal fees, and loss of credibility for filing a non-meritorious claim. Shah testified he charged Simmons a flat fee of $375 and that he did not initially charge a separate research fee. Shah testified Simmons retained his services in December 2002, and Shah informed Simmons he did not have a claim in October 2003, when he refunded Simmons' retainer.
¶ 28. Simmons testified he paid Shah $165 to research his claim and at a later date, "after [Shah] researched it and told me I [Simmons] had a case, I turned around and paid him $365 to take the case for me to court." During the hearing on the formal complaint, Simmons produced two receipts, one for $165 paid to Shah to research the file, and a second receipt for $365 "to take the case to court." Although Shah swore he charged only a one time fee of $375, both receipts were handwritten and signed by Shah.
¶ 29. Additionally, Simmons stated he always had to initiate contact with Shah, for Shah never contacted him. Simmons testified he went by Shah's office on a daily basis because Shah always told him to "check back tomorrow" or "check back [the] next day." Shah claimed Simmons would not show up for appointments, but Simmons denied this during testimony.
¶ 30. The Tribunal was presented with conflicting testimony and rendered its decision accordingly. Further, the Tribunal properly considered Shah's prior disciplinary history, his refusal to acknowledge the wrongful nature of his conduct, his refusal to accept responsibility for his misconduct, and his twenty-two year experience in the practice of law. In its opinion, the Tribunal outlined its findings for each violation and held, "[t]he Tribunal finds, by clear and convincing evidence, that Mr. Shah's conduct amounts to violations of the following Rules of the Mississippi Rules of Professional Conduct. . . ."
¶ 31. "This Court may accept or reject the evidence presented in whole or in part, although deference may be given to the findings of the Complaint Tribunal because it has the best opportunity to observe the witnesses." Stegall v. Miss. Bar, 618 So.2d 1291, 1294 (Miss.1993). Although this Court does not uphold the sanction issued by the Tribunal, after thorough review of the record, this Court finds that the Tribunal did not err in its findings that Shah did indeed violate M.R.P.C. 1.2(a), 1.3, 1.4, 8.1(a), 8.4(a), and 8.4(c).
III. Whether the Complaint Tribunal erred in denying Shah's Motion for Judgment of Acquittal Notwithstanding the Verdict, or in the Alternative, Motion for New Trial
¶ 32. "`The standard of review in considering a trial court's denial of *523 a motion for judgment notwithstanding the verdict is de novo.' Wilson v. Gen. Motors Acceptance Corp., 883 So.2d 56, 64 (Miss. 2004). `The trial court must view the evidence in the light most favorable to the non-moving party and look only to the sufficiency, and not the weight of the evidence.'" Id. at 63; Irby v. Travis, 935 So.2d 884, 888 (Miss.2006) (citation omitted).
¶ 33. Following the hearing and ruling by the Tribunal on the formal complaint, Shah filed a Motion for Judgment of Acquittal Notwithstanding the Verdict, or in the Alternative, a New Trial. In his Motion, Shah stated the Tribunal erred for the following reasons: (1) denying Shah's Motion to Dismiss as he was denied the opportunity to cross-examine witnesses who were to have appeared at the investigatory hearing; (2) allowing the telephone conversation between Simmons and Kilgore to be admitted into the investigatory report, when Simmons was not placed under oath; (3) in considering Shah's prior sanctions as the Bar did not present these in its case-in-chief; (4) the evidence against Shah was less than clear and convincing; and (5) the Bar violated the rules of discovery for not tendering to Shah receipts produced at trial by Simmons. Further, Shah claimed the Bar violated the rules of discovery by failing to adequately respond to a multitude of interrogatories.
¶ 34. Issues (1) and (2) have been discussed supra and are without merit. Shah's argument regarding Issue (3), that the Tribunal erred in considering Shah's prior sanctions, is likewise without merit. "It is well settled that a complaint tribunal may consider prior disciplinary offenses of the attorney as aggravating factors when deciding what type and degree of discipline to impose." Haimes v. Miss. Bar, 601 So.2d 851, 853-54 (Miss. 1992) (citations omitted). Further, when deciding on the imposition of discipline, the Tribunal is required to consider Shah's previous disciplinary history. See Miss. Bar v. Inserra, 855 So.2d at 450 (Miss. 2003).
¶ 35. As to Issue (4), this has been discussed supra and is without merit. Regarding Shah's argument in support of Issue (5), the Bar replied it did not know Simmons was going to produce the receipts for the $165 and $365 he paid Shah. Simmons pulled the receipts from his pocket during his testimony. The Bar stated it introduced copies of the receipts only after Simmons showed the receipts to the Tribunal. The exchange between counsel for the Bar and Simmons was as follows:
Bar: How much did you pay him to research your case?
Simmons: It was $165 if I'm not mistaken. You know, I have it here. I have a copy of it here. I have a copy of it, but I think it was $165 to review the file.
Bar: Do you have a receipt? Did you get a receipt for the $165?
Simmons: Yes ma'am.
¶ 36. The Bar moved these receipts be admitted into evidence, and the Tribunal asked Shah if he had any objection, and he responded, "[n]o objection." As the Bar was not aware of these receipts prior to the hearing, the Bar did not posses the receipts to supplement their discovery responses. Of even greater import, Shah did not object to these receipts being entered into evidence. Therefore, Shah is barred from raising this issue. This Court ruled in Younger v. State, that when an issue is not raised at trial, but only in a post-trial motion, it is barred. "The circuit judge's reasons for refusing to allow the detective to testify are of no consequence because Younger attempted to bring an *524 issue on a post-trial motion that she failed to raise at the trial court level. Such attempts are barred." Younger v. State, 931 So.2d 1289, 1291 (Miss.2006).
¶ 37. The Bar additionally highlighted that Shah testified that he only charged Simmons one fee, when the evidence clearly revealed Shah charged Simmons two fees. Shah stated he was unaware of the existence of the receipts, although the receipts were prepared and signed by Shah. The Bar argued it was Shah who was not forthcoming during the discovery proceedings, nor in his testimony to the Tribunal.
¶ 38. Additionally, Shah claims a multitude of the Bar's responses to his interrogatories were inadequate and should have been supplemented after information was obtained in the telephone conversation with Simmons. Shah had access to the information given by Simmons in this conversation through the investigatory report. Further, Shah's initial discipline and what was learned or not learned in anticipation of the first hearing is not at issue. Shah's proceedings began "anew" when his initial discipline was vacated and Formal Hearing took place at his request. After review of the interrogatories and responses, this Court finds no error in the holding of the Tribunal, wherein it stated, "[a]lthough Mr. Shah provides a lengthy list of perceived discovery violations, the Tribunal can find no such violations in the discovery process in this case. Evidence was properly exchanged and admitted before the Tribunal for its consideration."
¶ 39. "The standard of review for a post-trial motion is abuse of discretion." Id. *5. (citations omitted). We cannot say the Tribunal abused its discretion in denying Shah's Motion for Judgment of Acquittal Notwithstanding the Verdict, or in the Alternative, for a New Trial.
IV. Whether the Complaint Tribunal erred in allowing the Bar to amend its pleadings
¶ 40. "This Court has stated that `motions for leave to amend are left to the sound discretion of the trial court. This Court reviews such determinations under an abuse of discretion standard and unless convinced that the trial judge abused his discretion, we are without authority to reverse.'" Church v. Massey, 697 So.2d 407, 412-13 (Miss.1997) (citations omitted).
¶ 41. At the close of its case-in-chief, pursuant to Mississippi Rule of Civil Procedure 15(b), the Bar moved to amend its formal complaint to include that Shah also violated M.R.P.C. 8.1(a), a different portion of 8.1(b), 8.4(c), and 1.16(d) based on evidence received at the hearing. Shah never objected to Simmons's testimony regarding Shah's representation, nor did Shah object to the admittance of the receipts into evidence. Shah exercised his right to question Simmons regarding these matters. Therefore, pursuant to M.R.C.P. 15(b), "[w]hen issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . ."
¶ 42. The Tribunal granted the Bar leave to amend to its pleadings. Pursuant to M.R.C.P. 15(b), this Court finds that the Tribunal did not err in granting the Bar leave to amend its pleadings to conform to the evidence presented at trial.
V. Whether the Tribunal members should have been required to recuse themselves from this case
¶ 43. Shah claims two of the Tribunal members should have recused themselves from this case, as they had previously heard a case against Shah and imposed discipline on Shah. Shah asserts this proves bias in favor of the Bar.
*525 ¶ 44. On August 10, 2004, Shah presented an identical argument in his Motion to Rescind Court's August 3, 2004 Order [which appointed the three judge panel], or in the Alternative to Recuse the Three Judge Panel of the Complaint Tribunal. On September 20, 2004, this Court issued an Order Denying the Motion to Rescind Court's August 3, 2004 Order, or in the Alternative, to Recuse the Three Judge Panel of the Complaint Tribunal.
¶ 45. This Court held, "There is no rule of law stating that a Tribunal member (or any other judicial official) cannot hear successive cases against the same party. If this were so, a repeat criminal offender could not be tried in the same court twice. This argument is utterly specious." Haimes v. Miss. Bar, 601 So.2d at 854.
¶ 46. This issue likewise fails for lack of merit.

CONCLUSION
¶ 47. "The primary concern when imposing sanctions for attorney misconduct is that the punishment be sufficient to `vindicate in the eyes of the public the overall reputation of the bar.'" Catledge v. Miss. Bar, 913 So.2d 179, 183 (Miss.2005) (citation omitted). Shah should not misconstrue our non-affirmation of the sanctions imposed by the Tribunal as vindication for his unprofessional conduct. We do not take lightly either Shah's present or previous violations. It is to this end we quote from Justice Dickinson's dissent found in Miss. Bar v. Walls, "It is [our] sincere hope that [Shah] has . . . some desire to overcome what appears to be a habit of violating the Rules of Professional Conduct." Miss. Bar v. Walls, 890 So.2d 875, 880 (Miss.2004) (Dickinson, J., dissenting). "The purpose of discipline is not simply to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar misconduct." Miss. State Bar Ass'n v. A Miss. Attorney, 489 So.2d 1081, 1084 (Miss.1986). We are hopeful that the imposition of a three year suspension shall be sufficient to accomplish that purpose.
¶ 48. Therefore, this Court suspends Azki Shah from the practice of law for three years and that upon completion of this suspension, and preceding his application for reinstatement pursuant to M.R.D. 12.2, Shah shall be required to take and pass the Multi-State Professional Responsibility Exam, consistent with the guidelines set forth in M.R.D. 12.5. Shah is further ordered to pay all costs of these proceedings.
¶ 49. AZKI SHAH IS SUSPENDED FROM THE PRACTICE OF LAW FOR THREE (3) YEARS. UPON COMPLETION OF THIS SUSPENSION, AND PRECEDING HIS APPLICATION FOR REINSTATEMENT PURSUANT TO M.R.D. 12.2, SHAH SHALL BE REQUIRED TO TAKE AND PASS THE MULTI-STATE PROFESSIONAL RESPONSIBILITY EXAM, CONSISTENT WITH THE GUIDELINES SET FORTH IN M.R.D. 12.5. SHAH SHALL PAY ALL COSTS OF THESE PROCEEDINGS.
SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. CARLSON, J., NOT PARTICIPATING.
EASLEY, Justice, Dissenting:
¶ 50. I must respectfully dissent from the majority's suspension of Azki Shah from the practice of law. I find that Shah's due process rights were violated.
¶ 51. "The Supreme Court of Mississippi has exclusive and inherent jurisdiction *526 in bar disciplinary matters." Miss. Bar v. Pels, 708 So.2d 1372, 1373 (Miss.1998); see also M.R.D. 1(a). In matters involving attorney discipline, this Court conducts a de novo review. Miss. Bar v. Shelton, 855 So.2d 444, 445 (Miss.2003) (citing Pels, 708 So.2d at 1373); see also M.R.D. 9.4. This Court must decide each disciplinary case on its own unique merits. Fougerousse v. Miss. State Bar Ass'n, 563 So.2d 1363, 1366 (Miss.1990).
¶ 52. However, "[s]ince Mississippi Bar disciplinary matters are quasi-criminal in nature, attorneys accused in such matters are entitled to due process of law under both the Fourteenth Amendment to the United States Constitution and Article 3, Section 14 of our state constitution." Goeldner v. Miss. Bar, 891 So.2d 130, 133 (Miss.2004); Harrison v. Miss. Bar, 637 So.2d 204, 218 (Miss.1994); see also In re Ruffalo, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968) (disciplinary proceedings which seek to impose sanctions on an attorney are adversary proceedings of a quasi-criminal nature).
¶ 53. In Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 434, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982), the United States Supreme Court held that "bar disciplinary proceedings are neither criminal nor civil in nature, but rather are sui generis." Id. (citing In re Logan, 70 N.J. 222, 358 A.2d 787 (1976)). "The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." Middlesex County Ethics Comm., 457 U.S. at 434, 102 S.Ct. 2515; see also Theard v. United States, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957).
¶ 54. Such proceedings are in the nature of an inquest or inquiry as to the conduct of the attorney to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from persons unfit to practice law. See Ex parte Wall, 107 U.S. 265, 289-90, 2 S.Ct. 569, 27 L.Ed. 552 (1882). In Wall, the United States Supreme Court stated:
The question, what constitutes due process of law within the meaning of the Constitution, was much considered by this court in Davidson v. New Orleans, 96 U.S. 97, [24 L.Ed. 616]; and Mr. Justice Miller, speaking for the court, said: "It is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has, by the laws of the State, a fair trial in a court of justice, according to the modes of proceeding applicable to such a case." And, referring to Murray's Lessee v. Hoboken Land and Improvement Co., 18 How. 272, [15 L.Ed. 372], he said: "An exhaustive judicial inquiry into the meaning of the words `due process of law,' as found in the Fifth Amendment, resulted in the unanimous decision of this court, that they do not necessarily imply a regular proceeding in a court of justice, or after the manner of such courts."
Wall, 107 U.S. at 289-90, 2 S.Ct. 569; see Theard, 354 U.S. at 282, 77 S.Ct. 1274 (ample opportunity must be afforded to the accused practitioner to show cause).
¶ 55. In Ruffalo, 390 U.S. at 550-551, 88 S.Ct. 1222, the United States Supreme Court addressed the violation of the attorney's right to due process due to the introduction of new evidence where the attorney was not provided notice of the new evidence. The Court stated:
Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer. Ex parte Garland, *527 4 Wall. 333, 380, [18 L.Ed. 366]; Spevack v. Klein, 385 U.S. 511, 515, [87 S.Ct. 625, 17 L.Ed.2d 574]. He is accordingly entitled to procedural due process, which includes fair notice of the charge. See In re Oliver, 333 U.S. 257, 273, [68 S.Ct. 499, 92 L.Ed. 682]. It was said in Randall v. Brigham, 7 Wall. 523, 540, [19 L.Ed. 285], that when proceedings for disbarment are "not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence [sic]." Therefore, one of the conditions this Court considers in determining whether disbarment by a State should be followed by disbarment here is whether "the state procedure from want of notice or opportunity to be heard was wanting in due process." Selling v. Radford, 243 U.S. 46, 51, [37 S.Ct. 377, 61 L.Ed. 585].
In the present case petitioner had no notice that his employment of Orlando would be considered a disbarment offense until after both he and Orlando had testified at length on all the material facts pertaining to this phase of the case. As Judge Edwards, dissenting below, said, "Such procedural violation of due process would never pass muster in any normal civil or criminal litigation." n3 370 F.2d, at 462.
Ruffalo, 390 U.S. at 550-51, 88 S.Ct. 1222.
¶ 56. Here, the Bar scheduled an investigatory hearing which was not attended by the complainant, Marcus Simmons, or Shah. Subsequent to the hearing, Simmons contacted the Bar's general counsel, Adam Kilgore, to explain his absence. Simmons told Kilgore that Shah had refunded $375 to him; and therefore, he saw no reason to attend the hearing. Kilgore prepared and submitted a report to the Committee on Professional Responsibility. The report included the details of the telephone conversation between Simmons and Kilgore. Shah had no knowledge of the telephone conversation or the report prepared for the Committee prior to Kilgore's filing the report with the Committee. As such, the Bar submitted information to the Committee without providing notice to Shah, violating his due process rights.
¶ 57. Further, the Bar argues that Shah should have appeared at the investigatory hearing. The Bar, in effect, used Shah's failure to appear against him as an indication that he had failed to cooperate. The Mississippi Rules of Discipline provide:
The accused attorney is a party to the proceedings, and after written notice of the investigation or complaint has been given to the attorney by Complaint Counsel, the accused attorney or his counsel may appear at any investigatory hearing conducted by complaint counsel.
M.R.D. 5.7. (Emphasis added). The Mississippi Rules of Professional Conduct provide:
An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
[F]ail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.
M.R.P.C. 8.1(b) (emphasis added). The Bar incorrectly interprets M.R.P.C. 8.1(b) as requiring Shah to appear at the investigatory hearing. Shah contends that he supplied the information requested by the Bar and filed an answer. The Bar argues *528 that the answer was inadequate. Regardless of whether the information was adequate or not, neither M.R.P.C. 8.1(b) nor M.R.D 5.7 required Shah's presence at the investigatory hearing. M.R.D. 5.7 merely states that Shah must be afforded the opportunity to appear, and M.R.P.C. 8.1(b) only requires that Shah provide information to the Bar.
¶ 58. That being said, the Bar's letter to Shah informed him of the investigatory hearing and contained language similar to M.R.D. 5.7, which stated that his presence was not required. The Bar's letter sent to Shah specifically stated:
The attorney subject of the Complaint, together with his Counsel, if any, may appear at the Investigatory Hearing, but the attorney subject of the Complaint, cannot be compelled to cooperate or testify except as provided by Rule 8.1of the Rules of Professional Conduct.
(Emphasis added). The Tribunal even noted the confusion surrounding the Bar's letter, noting that the Bar should clarify the language used in the letter. Therefore, Shah was informed that he may appear, not that he had to appear in order to not be viewed by the Bar as failing to cooperate.
¶ 59. Because Shah's due process rights were violated, I cannot agree to Shah's suspension from the practice of law. The complaint is not properly before the Court and should be dismissed.
GRAVES, J., JOINS THIS OPINION.