986 So.2d 1080 (2008)
Lakeith DORSEY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00336-COA.
Court of Appeals of Mississippi.
July 22, 2008.
*1081 Tommy Wayne Defer, Water Valley, attorney for appellant.
Office of The Attorney General by Laura Hogan Tedder, attorney for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. LaKeith Dorsey and others were indicted for the armed robbery of the Isle of Capri Casino in Lula, Mississippi. In January 2004, Dorsey was tried separately for armed robbery in the Circuit Court of Coahoma County. The jury found Dorsey guilty, and the trial court sentenced him to twenty-five years in the custody of the Mississippi Department of Corrections. The trial court granted Dorsey's motion for an out-of-time appeal for good cause shown. Thereupon, Dorsey filed this appeal in which he challenges the weight and sufficiency of the evidence.
¶ 2. We find that the trial court lacked discretion to allow an out-of-time appeal of Dorsey's conviction and sentence. However, we agree with the trial court's finding of good cause shown. Therefore, we suspend *1082 the time for taking an appeal pursuant to Mississippi Rule of Appellate Procedure 2(c) and grant this out-of-time appeal. We find that the evidence was sufficient to support the verdict and that the verdict was not against the overwhelming weight of the evidence. Therefore, we affirm.

FACTS
¶ 3. On the morning of September 11, 2003, Barbara Johnson, a cashier, and Tracy Willis, a shift manager, were working inside a cage in the Isle of Capri Casino.[1] The cage was located near a roped-off "pit" area containing card tables. Shortly before 7:00 a.m., two masked men ran into the casino and jumped the ropes into the pit area. Both men wore gloves and wielded guns. The taller man held his gun on the casino patrons seated at the card tables and told them to get down on the floor. The shorter man approached the cage and told Willis to "get over here and get me the money." He passed Willis a white bag, which she filled with money and returned to the man. According to Johnson, Willis appeared to be scared during this transaction. Both men ran out of the casino and got into the back seat of a brown Oldsmobile sedan, which was driven by a third man. The car sped across the nearby bridge to Helena, Arkansas. A total of $64,310 in cash was taken from the casino. One casino employee testified that the shorter man was about five feet, eight inches tall, while another employee testified that the shorter man was about five feet, five inches tall.
¶ 4. Once in Helena, the three men met a fourth man, who was waiting inside a blue Oldsmobile sedan parked behind a deserted gas station. The four men abandoned the brown sedan and drove away in the blue sedan. Several minutes later, officers with the West Helena, Arkansas Police Department, who had been alerted about the robbery, attempted to stop the blue sedan. The blue sedan initially stopped for the police, but then accelerated. The police pursued the blue sedan, which promptly struck a fence and stopped. The sedan's four occupants fled.
¶ 5. The police captured Danyel Richardson at the scene of the crash. A short time later, the police apprehended Tremayne Douglas and Caidree Harris. These three men waived extradition to Mississippi. Dorsey was captured several days later in Tunica, Mississippi. Coahoma County Sheriff Andrew Thompson, Jr., testified that Richardson is six feet, two inches tall and that Dorsey is five feet, three inches tall.
¶ 6. A white pillow case containing $64,309 in cash was found lying on the ground outside the rear driver's side door of the blue sedan. A red bandanna, a toboggan hat, and a white baseball cap were found on the ground nearby. Another red bandanna and toboggan hat were found inside the sedan. A nickel-plated 9mm handgun was recovered from the floor of the passenger compartment. Dorsey's Mississippi identification card was located inside the vehicle. Police determined that the blue sedan was registered to Dorsey and that the brown sedan had been stolen in Tunica several hours before the robbery.
¶ 7. Richardson, Douglas, and Dorsey were indicted as principals to the armed robbery, and Harris was indicted as an accessory after the fact. Douglas and Harris testified at Dorsey's trial on behalf of the State. Both denied having made a *1083 deal with the State in exchange for their testimony. Douglas testified that he was the driver of the brown sedan. He stated that he, Dorsey, and Richardson all met in Tunica. Douglas testified that Richardson told him to stop at the casino because Richardson needed to cash a check. Douglas stated that at the casino, Richardson and Dorsey exited the car and returned about ten minutes later. Douglas said he did not see them go inside the casino, but he assumed that they did. When they returned, Richardson yelled at Douglas to drive away, and they traveled to Helena, Arkansas where they switched cars. Douglas testified that he is approximately five feet, eleven inches tall.
¶ 8. Harris testified that he was the driver of the blue sedan. Harris stated that Richardson, Dorsey, and Douglas drove off in the brown car, and they left him waiting with the blue car running at the deserted gas station. Douglas was driving the brown car. Between five to ten minutes later, they returned and got into the blue car; Harris drove the blue car. Harris testified that when the police tried to pull them over, Richardson pulled a gun on him and ordered him to drive away. Harris denied having known of the armed robbery plan. He testified that he is approximately five feet, eight inches tall.

LAW AND ANALYSIS

I. THE TRIAL COURT LACKED THE DISCRETION TO GRANT DORSEY'S MOTION FOR AN OUT-OF-TIME APPEAL.
¶ 9. The order denying Dorsey's motion for a judgment notwithstanding the verdict (JNOV) or a new trial was entered on March 22, 2004. With new counsel, Dorsey filed his motion to appeal out of time on January 16, 2007. In the motion, Dorsey alleged that his trial counsel, Azki Shah, had been disbarred and suspended from the practice of law by orders of the Supreme Court of Mississippi entered on June 23, 2005, and January 4, 2007. Dorsey stated that an appeal of the conviction was never filed by Shah, and he had done nothing to cause his appeal to be untimely filed. On February 1, 2007, the trial court granted the motion for good cause shown, giving Dorsey thirty days from the date of the order in which to perfect his appeal. Accordingly, Dorsey filed his notice of appeal on February 26, 2007. Neither party's brief addresses the timeliness of this appeal.
¶ 10. A trial court has the authority to grant a criminal defendant's motion for an out-of-time appeal if grounds exist and the request is brought under the Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA). Miss.Code Ann. § 99-39-5(1)(h) (Rev.2007); see Harris v. State, 578 So.2d 617, 619 (Miss.1991). However, the trial court's authority to grant an out-of-time appeal under the UPCCRA was not implicated here. This is because the trial court did not consider Dorsey's motion under the UPCCRA, and Dorsey's motion did not invoke the UPCCRA or make any attempt at compliance with the UPCCRA's pleading requirements. See Miss.Code Ann. § 99-39-9 (Rev.2007).
¶ 11. According to Mississippi Rule of Appellate Procedure 4(a), the notice of appeal shall be filed "within thirty days of the date after the entry of the judgment or order appealed from." However, if a criminal defendant makes a timely motion for JNOV or a new trial, the time for taking an appeal shall run from the date of the entry of the order denying the motion. M.R.A.P. 4(e). The Mississippi Rules of Appellate Procedure provide that the trial court may grant an extension upon motion filed not later than thirty *1084 days after the expiration of the prescribed time for taking an appeal. M.R.A.P. 4(g). The rules also permit the trial court, for a limited time, to reopen the time for appeal upon a finding that a party entitled to notice of the entry of judgment or order did not receive such notice within twenty-one days of its entry and no party would be prejudiced. M.R.A.P. 4(h). A motion pursuant to Rule 4(h) must be made within 180 days of the entry of the judgment or order or within seven days of receipt of notice, whichever is earlier. Id. The supreme court has recognized that "[n]o provision is made [in the rules] authorizing the trial court, sua sponte or on motion filed in that court, to thereafter grant an out-of-time appeal." McGruder v. State, 886 So.2d 1, 2(¶ 4) (Miss.2003). This Court has held that a trial court was without discretion to grant an out-of-time appeal after the expiration of the 180-day period prescribed by Rule 4(h). Parker v. State, 921 So.2d 397, 399(¶ 5) (Miss.Ct.App.2006).
¶ 12. The trial court granted Dorsey's motion for an out-of-time appeal approximately three years after entry of the order denying Dorsey's post-trial motion. Therefore, the trial court lacked discretion to grant Dorsey's motion for an out-of-time appeal. Id. However, this Court may suspend the time requirements for taking a criminal appeal under Mississippi Rule of Appellate Procedure 2(c) "[i]n the interest of expediting decision, or for other good cause shown." "[W]e may grant an out-of-time appeal `where a person is convicted of a crime and through no fault of his own is effectively denied his right to perfect his appeal within the time prescribed by law by the acts of his attorney or the trial court.'" McGruder, 886 So.2d at 2(¶ 4) (quoting Jones v. State, 355 So.2d 89, 90 (Miss.1978)). "We may suspend Rules 2 and 4 `when justice demands' to allow an out-of-time appeal in criminal cases." Id. (citing Fair v. State, 571 So.2d 965, 966 (Miss.1990)).
¶ 13. Dorsey averred that his notice of appeal was never filed by his trial counsel, Shah, who shortly after Dorsey's trial was "disbarred and suspended from the practice of law in the State of Mississippi." The cases of Shah v. Mississippi Bar, 919 So.2d 59 (Miss.2005) and Shah v. Mississippi Bar, 962 So.2d 514 (Miss.2007) lend support to Dorsey's averments. In the first case, Shah was disbarred for his conduct surrounding his failure to file an appeal of his client's criminal conviction after accepting a fee for performing the work. Shah, 919 So.2d at 64-66 (¶¶ 16-34). In the second case, Shah violated the Mississippi Rules of Professional Conduct because he accepted a real estate case, but he failed to file a complaint on behalf of the client. Shah, 962 So.2d at 519 (¶¶ 12-13), 522(¶ 31). After a hearing, the Complaint Tribunal disbarred Shah. Id. at 517(¶ 1). On review, the supreme court modified Shah's punishment from disbarment to a three-year suspension. Id.
¶ 14. Shah was disbarred and suspended from the practice of law for substantially the same conduct as that alleged by Dorsey, specifically, his failure to file a court document pursuant to his agreement with a client. Once Dorsey hired new counsel, that attorney was diligent in prosecuting Dorsey's appeal. Under these circumstances, we find that justice demands that we suspend the time for taking an appeal and afford appellate review to this fully briefed appeal. Therefore, we proceed to the merits of Dorsey's arguments.

II. THE TRIAL COURT DID NOT ERR BY DENYING DORSEY'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT OR, ALTERNATIVELY, FOR A NEW TRIAL.
¶ 15. Dorsey challenged the sufficiency of the evidence with his motion for *1085 a JNOV, which was denied by the trial court. On review of the sufficiency of the evidence, "the critical inquiry is whether the evidence shows `beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss. 1968)). We do not ask ourselves whether we believe the evidence showed guilt beyond a reasonable doubt. Instead, we inquire whether, considering the evidence in the light most favorable to the verdict, a rational trier of fact could have found each essential element of the crime beyond a reasonable doubt. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560(1979)). "[I]f a review of the evidence reveals that it is of such quality and weight that, `having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient." Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). However, if the facts and inferences, so considered, point in favor of the defendant on any element of the offense with sufficient force that no reasonable juror could have found guilt beyond a reasonable doubt, then we must reverse and render. Id. (quoting Edwards, 469 So.2d at 70).
¶ 16. In order to secure Dorsey's conviction of armed robbery, the State was required to prove beyond a reasonable doubt that Dorsey "feloniously [took] or attempt[ed] to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon." Miss. Code Ann. § 97-3-79 (Rev.2006). In his brief, Dorsey admits that someone robbed the Isle of Capri casino. Dorsey's sole argument is that there was insufficient evidence identifying him as the perpetrator to enable a reasonable jury to find him guilty of armed robbery beyond a reasonable doubt. In support of this argument, Dorsey points to the following facts: (1) Douglas did not actually see him enter the casino when Douglas dropped him off there; (2) Douglas testified that Richardson yelled at Douglas to drive to Arkansas; (3) no one identified Dorsey inside the casino; (4) no physical evidence tied Dorsey to the armed robbery; (5) no one saw Dorsey flee from the scene of the car crash; (6) Dorsey was not caught at the scene of the car crash; and (7) there was no evidence that Dorsey directly participated in the planning of the armed robbery.
¶ 17. We disagree with Dorsey's argument because, considering the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, there was sufficient evidence to enable a reasonable jury to conclude beyond a reasonable doubt that Dorsey committed the acts constituting armed robbery. Both Douglas and Harris identified Dorsey as one of the co-participants in the armed robbery. Douglas testified that he dropped Dorsey and Richardson off in front of the casino, and when they returned approximately ten minutes later, Richardson ordered him to drive away. Harris testified that when Douglas, Dorsey, and Richardson met back up with him in Arkansas, both Dorsey and Richardson were in the back seat of the brown sedan, and Douglas was driving the brown sedan. A security videotape of the armed robbery that was admitted into evidence showed *1086 the two robbers exit the casino and get into the back seat of a getaway car.
¶ 18. We recognize that Dorsey's identification rested solely upon accomplice testimony. This testimony was uncorroborated; even though several eyewitnesses testified that the robber who approached the cage was shorter than the other robber, this testimony did not implicate Dorsey to the exclusion of Harris, Douglas, or anyone else. Further, no physical evidence or eyewitness testimony placed Dorsey at the scene of either the casino robbery or the car crash. Regarding the ability of accomplice testimony to sustain a conviction, the supreme court has stated:
This Court has long held that the testimony of an accomplice must be viewed with "great caution and suspicion. Where it is uncorroborated, it must also be reasonable, not improbable, self-contradictory or substantially impeached." If the uncorroborated accomplice testimony does not suffer from these infirmities, such testimony may be found to adequately support a conviction. The trial court, in its discretion, may grant a cautionary jury instruction concerning accomplice testimony. This discretion is not absolute however, and may be abused if no cautionary instruction was given, and (1) the witness was, in fact, an accomplice, and, (2) the testimony was not corroborated.
Johns v. State, 592 So.2d 86, 88-89 (Miss. 1991) (citations omitted).
¶ 19. The testimony of Douglas and Harris was reasonable and not improbable or self-contradictory. The testimony also was not substantially impeached. On cross-examination, both Douglas and Harris denied that they were testifying in exchange for favorable treatment from the State. The trial court gave a cautionary instruction that instructed the jury to view the accomplice testimony with great care, caution, suspicion, and distrust. Matters regarding the weight and credibility of the evidence are for the jury. Brown v. State, 970 So.2d 710, 714-15(¶ 18) (Miss.2007). The jury was properly instructed concerning the uncorroborated testimony of Douglas and Harris. The testimony of Douglas and Harris was adequate to support Dorsey's conviction. Considering all the evidence in the light most favorable to the State, we find that the evidence was of such quality and weight that a reasonable jury could have concluded that Dorsey entered the casino with Richardson, approached the cage, and demanded cash from Willis while Richardson held a gun on the crowd. There was sufficient evidence establishing each element of armed robbery. Therefore, we affirm the trial court's denial of the motion for a JNOV.
¶ 20. Dorsey challenged the weight of the evidence with his motion for a new trial. According to our standard of review of the weight of the evidence, "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush, 895 So.2d at 844(¶ 18). In so doing, we weigh the evidence in the light most favorable to the verdict, and we will grant a new trial only in exceptional cases when the evidence preponderates heavily against the verdict. Id.
¶ 21. Weighing the evidence in the light most favorable to the verdict, Douglas and Harris identified Dorsey as a participant in the robbery, and Douglas's testimony established that Dorsey and Richardson went into the casino. The videotape showed that both robbers were armed. Johnson's testimony and the videotape established that Willis was frightened when she gave the cash to one of the robbers. The videotape showed the two robbers exiting *1087 the casino and getting into the back seat of a car driven by a third man. Douglas testified that he was that third man. Douglas's status as the driver of the first getaway car was corroborated by the testimony of Harris, who also said that Dorsey and Richardson were in the back seat of the car when they returned to West Helena, Arkansas. One of the getaway cars was registered to Dorsey. We do not find that the evidence so heavily preponderates against the verdict that to allow the verdict to stand would permit an unconscionable injustice.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Johnson testified that a cage is an enclosed area where casino patrons go to "cash out," or exchange coins for cash.