IRVING, P.J.,
for the Court:
¶ 1. On August 19, 2009, a Newton County jury convicted Kimberly Ann La-ney of driving under the influence causing manslaughter (DUI manslaughter). The circuit court sentenced Laney to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC). La-ney filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. On December 6, 2011, La-ney filed a motion requesting permission to proceed with an out-of-time appeal, which the court also denied.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On October 7, 2007, Thomas Dairo and Laney were involved in a car accident in Newton County, Mississippi, in which Dairo was killed. Laney was severely injured and spent several weeks in the hospital recovering. At the time of the accident, law enforcement officials could not determine whether Dairo or Laney was driving the car. Laney could not remember whether or not she was driving. Several months after Laney was released from *141 the hospital, she was arrested and charged with DUI manslaughter for Dairo’s death.
¶ 4. At trial, Dairo’s ex-wife, Tracy Dai-ro, testified that she and Dairo had been divorced for five years, but that she maintained a relationship with him for the sake of their daughter. Law enforcement officers from the Mississippi Highway Patrol contacted Tracy, informed her that Dairo had been in a car accident, and requésted that she drive to Mississippi from her home in Alabama to identify Dairo’s body. After identifying Dairo’s body, Tracy and her daughter went to visit Laney in the hospital. According to Tracy, Laney confessed to her that she was driving the car when the accident occurred. Also, Tracy testified that Dairo did not like to drive and that whenever Dairo got into a car, his custom was to remove his shoes. Tracy’s account of Dairo’s pattern while riding in a car matched the evidence found at the scene of the car accident. Tracy stated that Dairo’s and Laney’s lifestyles included heavy alcohol consumption and drug use, and she felt that the two of them had been “under the influence of multiple things, and .... that’s how they had crashed.”
■ ¶ 5. Trooper Gary Seale, with the Mississippi Highway Patrol, testified that he was the first highway patrolman to arrive at the scene of the accident. Trooper Sea-le testified that even though he was not the accident reconstructionist in this case, he was certified as an accident reconstruc-tionist. When he arrived at the scene, he was greeted by a deputy from the Newton County Sheriffs Office. After some discussion with the deputy, Trooper Seale inspected the scene and went to the ambulance to briefly interview Laney. According to Trooper Seale, when he got into the ambulance, he noticed “a strong smell of an alcoholic beverage in the. back of the vehicle,” which he believed to be coming from Laney. When Trooper Seale asked Laney what happened and if she was driving the vehicle when they crashed, Laney responded that she did not remember.
¶ 6. After briefly speaking with Laney, Trooper Seale went back to the vehicle. He noticed a woman’s purse in the driver’s seat and a pair of men’s tennis shoes on the floorboard on the front passenger side. He noted that Dairo was not wearing shoes. After walking the “path of the crash” and noticing several beer containers, he began taking pictures of the scene. Trooper Seale called Sergeant Michael Cain, also with the Mississippi Highway Patrol, and “told him that he needed to come and look at this as a possible vehicular[-jmanslaughter case.” Trooper Seale told Sergeant Cain that he smelled alcohol coming from Laney and that he believed that she was driving the vehicle at the time of the accident. Trooper Seale also admitted that it was not uncommon for individuals involved in an accident like this to not remember the details of the accident.
¶ 7. Sergeant Cain served as the accident reconstructionist for this case. He testified that he was called to- the accident scene because it “met the criteria for a crash team member to respond.” When Sergeant Cain arrived at the scene, Trooper Seale informed him that “the driver” had been taken to the hospital. Trooper Seale told Sergeant Cain that alcohol was involved in the crash. Sergeant Cain went to the hospital and tried to talk with La-ney, but she could not respond to his questions because she was héavily medicated. He noticed the smell of alcohol on Laney’s breath, and instructed one of the nurses attending to Laney to extract a blood sample. Once he got the results of the sample back from the Mississippi-Crime Lab, he discovered that Laney’s blood-alcohol-content level was .14 percent. Based on his investigation and the information that he *142 gathered at the scene, Sergeant Cain opined that
the accident occurred when the vehicle lost control and went off the highway, while traveling, I believe, ... approximately 86 miles per hour, ... and overturned and the occupants of the vehicle were ejected.... It was my belief that Ms. Laney was the driver of the vehicle and that she was operating [the vehicle with a blood-alcohol-content level] of .14 percent.
¶8. Sergeant Cain further testified that he found nothing while examining the inside of the vehicle that would assist in making “conclusions as to [an individual’s] positive location inside that particular vehicle.” Sergeant Cain also admitted that it was possible that the personal effects inside the car had been moved by other officers responding to the accident.
¶ 9. Dr. Steven Hayne performed the autopsy on Dairo. Dr. Hayne determined that Dairo had suffered numerous internal injuries that contributed to his death. Dr. Hayne opined that Dairo’s injuries were consistent with those sustained as a result of being ejected from a car during a motor-vehicle crash. Dairo had two underlying causes of death: a closed-head injury and lacerations of the right and left lungs, leading to a bilateral hemothorax. Dr. Hayne also stated that Dairo’s injuries could have occurred while he was in the vehicle, while “flying through the air,” or when he hit the ground. Finally, Dr. Hayne noted that Dairo had trace amounts of cocaine in his system, and Dairo’s blood-alcohol-content level was .27 percent.
¶ 10. Lañéis son, Colt Laney, testified that he was at the hospital with his mother when Tracy tried to talk to her. Colt stated that Laney could not respond to questions while she was at the hospital. She was receiving oxygen through a mask and would only moan. When Tracy asked Laney who was driving the car, Colt told Tracy that Laney was “not going to be able to respond to you right now.” Colt explained to Tracy that he had also asked Laney what had happened, and that she had not been able to respond to him. He testified that Laney later told him that she did not remember whether she or Dairo was driving the car on the night of the accident.
¶ 11. Brad Alexander, president of ASI Investigations, an accident-reconstruction-consulting firm, testified that he used the information gathered by Sergeant Cain, the crash report, and several of the photographs that Sergeant Cain had taken at the scene to “try to make some determination as to whether [he] could come up with a scientifically solid answer as to who was driving.” Alexander opined that, based on the available physical evidence, it would be impossible to tell who was driving the car on the night of the accident.
¶ 12. The jury convicted Laney of DUI manslaughter. On the same day that she was sentenced, her trial attorney withdrew from the case. Laney never perfected an appeal of her conviction and sentence. When Laney later petitioned the Mississippi Supreme Court for permission to proceed with an out-of-time appeal, the court, noting that Laney had not appealed her conviction and sentence, dismissed her application without prejudice and deferred to the circuit court. In response, the circuit court held a show-cause hearing on La-ney’s application for an out-of-time appeal, where she testified that there was a problem with filing the appeal within the thirty-day period. When the court asked her to explain the problem, Laney stated that her trial attorney refused to file an appeal unless she paid him more money. She further explained that because she is not from Mississippi and has no family in Mississippi, she was unable to get the money *143 to him before the deadline. She tried other avenues, including seeking help through MDOC’s legal-aid office and hiring another attorney, to no avail. Laney also stated that she knew after the court had sentenced her that she had thirty days to “file something for notice of appeal,” but that her trial attorney wanted $10,000 before he would file anything on her behalf.
¶ 13. After receiving testimony from Laney, the circuit court entered an order denying Laney’s application for an out-of-time appeal. As justification for the denial, the court stated:
It is undisputed that no appeal has been filed with the Mississippi Supreme Court. The proof will show that [p]eti-tioner is not an indigent, and thus she has the ability to hire legal counsel for said appeal. It further appears [that four] attorneys have been involved for some level of representation since her indictment, but none of which has resulted in the perfection of authority for an out-of-time appeal.
The [p]ost-[c]onviction [collateral [Relief statutes are codified under [Mississippi] Code [Annotated] [s]ection 99-39-1, et[ ] seq., and the [c]ourt has reviewed [s]ections 99-39-5 and 99-39-7 of said code with a view toward determining whether Petitioner has stated grounds for relief thereunder.
The [c]ourt is of the opinion and so finds that with the passage of nearly 3 years since her conviction, [petitioner has had ample time to effectuate her out-of-time appeal, and thus she is not entitled to relief under said code sections.
¶ 14. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 15. Laney argues that the circuit court erred in denying her motion to proceed with an out-of-time appeal. We review a circuit court’s denial of an out-of-time appeal for abuse of discretion. Arnold v. State, 93 So.3d 908, 910 (¶ 6) (Miss.Ct.App.2012).
¶ 16. Mississippi Code Annotated section 99-39-5(2)(i) (Supp.2013), a provision of the Mississippi Post-Conviction Collateral Relief Act, allows Laney to file a motion for post-conviction relief arguing that she is entitled to an out-of-time appeal. Here, Laney contends that she is entitled to an out-of-time appeal because she had difficulties finding an attorney to perfect her appeal after her trial attorney withdrew from the case.
¶ 17. Rule 4(a) of the Mississippi Rules of Appellate Procedure provides that a notice of appeal must be filed “within 30 days after the date of entry of the judgment or order appealed from.” If a defendant has filed a timely motion for a JNOY or a new trial, the time for filing the notice of appeal runs from the date of the entry of the order denying the motion. M.R.A.P. 4(e). Rule 4(h) of the Mississippi Rules of Appellate Procedure allows the circuit court to reopen the time for appeal if the defendant did not receive notice of the entry of judgment or order within twenty-one days of its entry and no party would be prejudiced. A petition to reopen the time for appeal must be made within 180 days of the entry of the judgment or order. Id. This Court has held that the circuit court is without discretion to grant an out-of-time appeal after 180 days after the entry of the judgment or order. Williams v. State, 107 So.3d 1016, 1018 (¶ 4) (Miss.Ct.App.2012).
¶ 18. Here, the circuit court did not abuse its discretion in denying Laney’s motion to proceed with an out-of-time appeal. The court entered an order denying *144 Laney’s post-trial motion on September 14, 2009. The time period for her to file a notice of appeal started to run on that date. Laney had until October 14, 2009, to perfect an appeal of her conviction and sentence. She missed this deadline. According to Rule 4(h), Laney had 180 days from September 14, 2009, to request an out-of-time appeal from the circuit court. However, the 180-day period expired on June 22, 2010, without a request for an out-of-time appeal from Laney. Therefore, the circuit court could not grant La-ney permission to proceed with an out-of-time appeal, and the court did not err in denying her application.
¶ 19. Nevertheless, this Court “may grant an out-of-time appeal where a person is convicted of a crime and through no fault of his own is effectively denied his right to perfect his appeal within the time prescribed by law by the acts of his attorney or the trial court.” Dorsey v. State, 986 So.2d 1080, 1084 (¶ 12) (Miss.Ct.App.2008) (quoting McGruder v. State, 886 So.2d 1, 2 (¶ 4) (Miss.2003)) (internal quotation marks omitted). Our supreme court has stated:
To prove his right to an out-of-time appeal, the movant must show by a preponderance of the evidence that he asked his attorney to appeal within the time allowed for giving notice of an appeal. Moreover, the movant must show that the attorney failed to perfect the appeal and that such failure was through no fault of the movant.
Sellers v. State, 52 So.3d 426, 428 (¶ 9) (Miss.Ct.App.2011) (quoting Dickey v. State, 662 So.2d 1106, 1108 (Miss.1995)). “We may suspend [the rules] when justice demands to allow an out-of-time appeal in criminal cases.” Dorsey, 986 So.2d at 1084 (¶ 12) (quoting McGruder, 886 So.2d at 2 (¶ 4)) (internal quotation marks omitted).
¶ 20. The record does not support Laney’s contention that she is entitled to an out-of-time appeal. Based on her statements at the show-cause hearing, Laney was aware on the day of sentencing that she had thirty days to file a notice of appeal. She also knew that she was unsatisfied with her trial attorney’s performance and would need to hire a new attorney to proceed with her appeal. Even though Laney contends that a number of extrinsic factors prevented her from pursuing an appeal of her conviction and sentence, it is undisputed that Laney was aware that she would need a new attorney after the conclusion of her trial. Her testimony at the show-cause hearing revealed that on the day of sentencing, she knew that her trial attorney would not proceed with the case without the payment of more money. Also, Laney testified that she knew that she had thirty days to file her notice of appeal and that she would either have to pay her trial attorney, hire a new attorney, or proceed on her own. Therefore, we cannot say that the failure to perfect La-ney’s appeal was through no fault of her own. Accordingly, we decline to suspend the rules to allow Laney to appeal her conviction and sentence, and we affirm the judgment of the circuit court.
¶ 21. THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.